The opinion of the court was delivered by
Monroe, J.
This is a petitory action, brought against James Bayhi, who is in possession, for the recovery of certain real estate, situated in the parish of St. Bernard, which the plaintiff claims to have purchased *1720 from Honore V. Bayhi, for $3,000 cash, by act, before Jas. D. St. Alexandre, Notary Public, of date May 19, 1899.
Defendant answers that he holds said property, as owner of one undivided half interest, and by the authority of Gustave Bayhi, his brother, who owns the other undivided half interest; that his brother and himself are the sole heirs of Honoré Y. Bayhi, who owned said property, and was in possession ¡thereof at the time of his death; that the act of sale relied on by the plaintiff, if consented to by said Honoré Y. Bayhi at any time, was obtained from him, not upon May 19, 1899, but a few days before his death, when his mind was enfeebled by disease, and through fraud, error, misrepresentation, and duress, and without consideration. The respondent then assumes the character of plaintiff in reconvention, and claims the value of certain movable property, said to have been taken possession of by plaintiff, together with damages alleged to have been sustained by him by reason of its removal, and he prays for judgment rejecting the plaintiff’s demand, and decreeing the act of sale sued on to be null. Gustave Bayhi, intervening, alleges that he and James Bayhi, the defendant, are the sole children and heirs of Honoré V. Bayhi; and that he is the administrator of the latter’s estate, and his intervention contains, in other respects, substantially the same averments as are to be found in the answer of James Bayhi.
The evidence shows that Honoré Y. Bayhi, the father of the defendant and the intervenor, was nearly eighty years old at the time of his death; that some four or five years prior thereto he had married, as his third wife, a widow lady, with three children, to whom he made an ante nuptial donation of one-third of his estate, or rather of an undivided third interest in the property here claimed, which was his home, and, with the exception of some little movable property, constituted his entire estate; that several months before his death, he had been stricken with a mortal illness, as the result of which he grew more and more feeble, so that he became, successively, bed-ridden, childish, and moribund.
There is a serious question as to his mental condition upon May 19, 1899, the day upon which the plaintiff claims that he executed the act of sale sued on, but there is none as to his physical condition, for, whether it was done on May 19th or June 7th, it is shown that he was confined to his bed, and that his wife supported his arm when he signed said act; and there is no question as to either his mental or physical *1721 condition on the seventh of June, the day upon which the defendants allege that Said act was executed, since* it is practically admitted that he was then, from either point of view, incapable of executing such an act. Another question, which the evidence leaves in grave doubt, is whether any such sum as three thousand dollars, for which the property is said to have been sold, was ever, in reality, paid; the most that is shown upon this subject being that the vendee handed, or counted, to the vendor, “some money”, which immediately passed into the hands of his wife, but, how much there was, no one has undertaken to say. The notary says: “I did not see the money counted out”. Albert Nunez, one of the witnesses to the act, testifies that he saw the vendee counting some money, but does not know how much he counted. Serpas, the other witness, says: “They kind of raised him up, and held his arm. “ Mrs. Bayhi helped him upon the pillow behind him, to prop him up, “ and held his arm, when he signed the act. * * * I wouldn’t “ swear that I saw $20 counted; any amount at all. I saw money, but “ how much, I do not know”. There were no other persons present except the vendor, who died upon the 13th of June, following the signing of the act, the vendee, who is the plaintiff herein, and Mrs. Bayhi, the surviving widow. The vendor could not be made a witness, because of his death, and the other two persons mentioned, do not testify — the plaintiff because he was so advised by his counsel, and Mrs. Bayhi, because the plaintiff made no attempt to obtain her testimony, and, through his counsel, objected to the defendant’s application for a continuance, and for time, to obtain it, which objection was sustained by the trial court under the following circumstances, to-wit: Mrs. Bayhi resided in the parish, and the defendants caused a subpoena to issue, directing- her to appear and testify. Upon the day of the trial, however, she was absent, and it was shown that, some two months before, she had gone to Biloxi, a resort upon the Gulf coast, where she was boarding-, and, as we understand it, spending- the summer. The defendants moved for a continuance, which was denied on the ground that the motion was not sworn to, and did not allege that the facts sought to be proved by her could not be established by other witnesses. The defendants then asked leave to supply the affidavit, and to amend the motion, which was denied. At the conclusion of the trial, and before argument, the defendants, in view of the fact that the case was to be left open in order to obtain the testimony of the physician who had attended *1722 Honoré Y. Bayhi, and also upon the ground that it had been demonstrated that the desired information could be obtained from no one else, asked that they be allowed ten days in which to obtain the testimony of Mrs. Bayhi, by commission, but this request was likewise refused, although, as it appears, it would have taken no longer to execute such commission than to obtain the testimony of the physician, and hence, there would have been no delay resulting from its being granted. The case was, therefore, decided by the court a qua, and comes to this court, without the testimony of either of two witnesses, who were both readily accessible and who along are capable of giving information upon an important and disputed point.
The counsel for the plaintiff suggests that fraud is not to be presumed, and that merely to make the charge, throws no burden of proof upon him against whom it is leveled. This proposition, as stated, may be accepted as sound in law, but it does not meet the requirements of the present case, in which the facts disclosed are unusual, and require explanation. Without going into' all the details, it is sufficient for present purposes, to say — -that it has been shown that Honoré Bayhi had two sons by his first marriage, who are now over fifty years of age; that one of them, James, has always lived with his father and continued to do so up to the time of his death; that, with the exception of some furniture, of inconsiderable value, the property in question, being their home, was the only property which the father possessed; that, at the age of 75 or 76 years, he donated one-third of said property to a widow lady, and thereafter ¡made her his third wife; that when, within a few months of his 80th year, he was stricken with a disease, of which he subsequently died, and, whilst suffering therefrom, enfeebled to such an extent that he was confined to his bed, and it was necessary that his wife should support his arm when so doing, he is said to have signed an act whereby he sold said property for $3,000, in cash, which amount was received by his wife, from the hands which were too weak to retain it; that neither his son, who lived in the house, nor any of his relatives or neighbors, who lived near; knew anything of the transaction at the time, or heard of it until pight days after his death; and that there was no change, or suggestion of change, of possession, in the meanwhile;,that no reason is given or suggested why this old man, on his death bed, should have sold the roof over his head; that no part of the three thousand dollars, which is said thus to have been paid to him a few weeks before his death, was *1723 found among the assets of his succession; that the widow, by whom it is said to have been received, was absent from her home in the parish at the time of the trial which involved the whole of her deceased husband’s estate; and that the plaintiff, who claims to have purchased said estate, being present at said trial, abstained from going on the stand, and withheld his testimony. These circumstances, without regard to others disclosed in the record before us, present a concrete ease, to which the abstract proposition, that a mere charge of fraud does not throw the burden of proof on him against whom it is made, has no application, for the facts which are shown, throw a grave doubt upon the reality and good faith of the transaction and the burden of proof is shifted to the parties who know the truth, and can establish it by their testimony, and when they fail to furnish evidence clearly within their power, all the presumptions of law are against them. King vs. Atkins, 33rd Ann., 1057; School Board vs. Trimble, 33rd Ann., 1078; Pruyn vs. Young, 51 Ann., 32.
We are of opinion that there was error in the ruling of the trial judge, in refusing to the defendants the opportunity of obtaining the testimony of Mrs. Bayhi; that it is possible that counsel for the plaintiff erred in the advice given to his client that the latter should withhold his testimony; and that the interests of justice will be best subserved by remanding the case.
It is therefore ordered, adjudged and decreed that the judgment appealed from he annulled, avoided and reversed, and that this cause be remanded, with leave to the parties, respectively, to introduce such further evidence and otherwise proceed as they may be advised, the costs of the appeal to be paid by the plaintiff, and those of the lower court to await the final determination of the cause.