(100 South. 41)

No. 24516.

### GERTH'S REALTY EXPERTS, Inc., v. KRACKE et al.

(March 24, 1924. Rehearing Denied by Division B April 30, 1924.)

*(Syllabus by Editorial Staff.)*

1. Corporations ⊂⇒668(15)—Service on president of foreign corporation not doing business in state held not to confer jurisdiction.

In an action against foreign corporation not doing business in the state, service on president at his domicile did not confer jurisdiction ratione personæ; Act No. 149 of 1890 being superseded by Act No. 54 of 1904.

2. Corporations ⊂⇒668(1)—Exception to citation held not waived by objection to jurisdiction ratione personæ.

Exception to citation on foreign corporation was not waived because it concluded with words "that this court is without jurisdiction ratione personæ."

3. Trial ⊂⇒68(3)—Reopening of case after argument to permit filing of charter of corporation not an abuse of discretion.

Where corporate existence of corporation was attacked in suit by it, *held*, that it was not

an abuse of discretion at conclusion of argument to reopen case to permit charter to be filed.

**4. Corporations ☞28(1)—De facto corporation shown by filing of charter and admission of corporate existence.**

Where, in suit by corporation, its corporate existence was attacked, filing of charter and admission of corporate existence established existence of at least de facto corporation.

**5. Brokers ☞86(1)—Evidence held to support judgment.**

In action to recover brokerage commissions for selling real estate, evidence *held* to sustain a judgment for plaintiff.

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Judge.

Action by Gerth's Realty Experts, Incorporated, against Thomas W. Kracke and the Gulf Coast Orchard & Products Company. Judgment for plaintiff, and defendants appeal. Reversed as to Company, and affirmed as to individual defendant.

Eugene S. Hayford, of New Orleans, for appellants.

George Montgomery, of New Orleans (F. F. Teissier, of New Orleans, of counsel), for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

BRUNOT, J. This is a suit in personam against the Gulf Coast Orchard & Products Company and Thomas W. Kracke, in solido, for $3,400, with legal interest thereon from May 7, 1919.

From a judgment in favor of plaintiff as prayed for, both defendants have appealed.

The petition alleges that the sum sued for is the commission due plaintiff on the actual selling price of certain real estate.

The Gulf Coast Orchard & Products Company is a Mississippi corporation. Thomas W. Kracke is the president of the corporation and the owner of a controlling interest therein. He has been a resident of Louisiana for many years. For the past four years he has resided about half the time in Mississippi, but it is admitted that he lives at 861 St. Charles street.

Citation upon the Gulf Coast Orchard & Products Company was made upon Thomas W. Kracke, in person, in the city of New Orleans. The Gulf Coast Orchard & Products Company excepted to the citation. The exception is as follows:

"That exceptor is a Mississippi corporation doing business under the laws of the state of Mississippi, and having its legal domicile at Pascagoula, Jackson county, Miss., and that said corporation has no office in this state, and conducts no business in Louisiana, and that the service herein is not a good and valid service, and defendant excepts to same.

"That this court is without jurisdiction ratione personæ."

[1] After a hearing thereon the lower court overruled the exception, and we think this ruling was erroneous. In support of its contention that the citation was valid plaintiff relies upon the decisions of this court rendered prior to 1904. Act No. 149 of 1890 was superseded by Act 54 of 1904. Jackson v. Waters-Pierce Oil Co., 136 La. 764, 67 South. 822.

[2] It was contended in the argument that because the exception concludes with the words "that this court is without jurisdiction ratione personæ" the defendant has coupled with its exception to the citation a plea to the jurisdiction of the court, and, as this plea is not made in the alternative with reservation of defendant's rights under the exception, the plea waives the exception to the citation. We do not concur in this view. This is a suit in personam against a nonresident corporation that does no business in this state, has no agent or designated representative here, and owns no property in Louisiana.

"It is well settled that those who are absentees without property here, whether they are persons or corporations, must be sued at their

domicile, in all actions in personam." Gouner v. Missouri Valley Bridge & Iron Co., 123 La. 964, 49 South. 657.

In the Gouner Case this court says:

"When a petition cannot legally be served on a defendant, the court can exercise no jurisdiction over him. The service defines the court's jurisdiction. * * * The leading case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, is admirably clear. It lays down the rule with precision. * * * That case has been affirmed and reaffirmed by the Supreme Court of the United States. The state courts have invariably accepted it."

The exception in this case is to the citation, and because there was not a good and valid service it is alleged in the exception that the court is without jurisdiction ratione personæ. We cannot consider this reference to the court's lack of jurisdiction as an independent or alternative plea, or as waiving any right of the defendant.

Thomas W. Kracke excepted to the petition as disclosing no right or cause of action. Pending a hearing on this exception a preliminary default was entered against this defendant. On motion of counsel for defendant a rule was issued to show cause why the default should not be set aside. The minute entries do not disclose what hearing, if any, was had on the rule to show cause, but it appears that the exception was overruled and leave was granted the defendant to file another exception. Thereupon plaintiff filed a supplemental petition together with the contract sued upon, and defendant filed an exception of no right or cause of action as to both the original and supplemental petitions. The exception was overruled, and defendant answered, denying the corporate existence of the plaintiff and the authority of Charles S. Gerth, its general manager, to represent it in this proceeding, denying any indebtedness to the plaintiff or the existence of any contract with the plaintiff, but admitting that, as the representative of the Gulf Coast Orchard & Products Company, he entered into the contract sued upon with Charles S. Gerth personally. The defendant denies that the contract was altered or changed by oral agreement, or that Charles S. Gerth carried out his part of the agreement. The answer concludes with a charge of bad faith, in. that Charles S. Gerth represented both the purchaser and the seller in the negotiations, without the knowledge of defendant.

During the progress of the trial the plaintiff offered to introduce in evidence the original charter of Gerth's Realty Experts, Inc., together with the certificate of the recorder of mortgages, the newspaper clipping attached to the charter showing the publication thereof, and the certificate of the Secretary of State, with leave to substitute a certified copy for the original. When this offering was made counsel for the defendant entered the following admission:

"I will admit that that is the charter, and that it is a corporation." Transcript, p. 81.

In view of this admission, the documents tendered were not filed. Thereafter Mr. George Montgomery, plaintiff's counsel, was called as a witness, and counsel for defendant asked and obtained from him answers to the questions as follows:

"Q. What is your connection with Gerth's Realty Experts Company, Inc.?
"A. President and stockholder.
"Q. Have you always been president of that corporation?
"A. Yes.
"Q. Are you a stockholder of that corporation?
"A. Yes.
"Q. To what extent?
"A. To the extent mentioned in the charter; 20 shares.
"Q. Have you paid for your stock?
"A. Yes.
"Q. In what form?"

At this point the witness addressed the court as follows:

"Of course, I am giving this testimony subject to your honor's rule, that, in order to at-

tack the charter, he must make a direct allegation."

The court ruled that where a charter exists valid on its face it cannot be collaterally attacked. Counsel excepted to this ruling, and the case was closed. After the argument or at its conclusion counsel for defendant contended that the answer denied the existence of the plaintiff corporation. Counsel for plaintiff announced that had he known the corporate existence of his client was at issue he would have filed the charter and he therefore applied to the court to reopen the case for the purpose of permitting him to do so. The court overruled an objection to the reopening of the case and permitted the filing of the charter.

[3] The reopening of a case is a matter within the discretion of the court and under the circumstances disclosed by this record the court's discretion was correctly and equitably exercised.

[4] The filing of the charter in evidence and the admission in the transcript (page 81) establish the existence of at least a de facto corporation.

" 'If the state acquiesce in the usurpation of corporate powers, individuals cannot complain.' This rule finds authority in Cyc. vol. 10, p. 256, wherein it is said that the rightfulness of the existence of a body claiming to act, in fact acting, in the face of the state as a corporation, cannot be litigated in an action between private individuals and the assumed corporation. * * * The rightful existence of a corporation cannot be raised in a collateral proceeding." New Iberia Sugar Co. v. Lagarde, 130 La. 393, 58 South. 18; Nelson v. T. & P. Ry. Co., 152 La. 117, 92 South. 754.

This suit was filed in 1919, and the authority of the general manager to file it is conferred by section 16 of Act 267 of 1914, which is as follows:

"That the * * * manager of a corporation organized under the laws of Louisiana, or of a foreign corporation, doing business in this state, shall have power in the name and in behalf of the corporation to authorize the institution of any suit and other legal proceedings, and no exception of want of authority shall lie on the part of any defendant."

[5] Defendant's denial that he is indebted to plaintiff or that he had any dealings with plaintiff is not sustained by the record. There is no averment in the answer that he would not have dealt with plaintiff.

"In onerous contracts, such as sale, exchange, loan for interest, letting and hiring, the consideration of the person is by law generally presumed to be an incidental cause, not a motive for a contract." R. C. C. art. 1836; Carlisle v. The Eudora, 5 La. Ann. 15.

The contract sued upon consists of two parts. It was filed with the supplemental petition and marked as Exhibits A and B, respectively. Both parts are in the form of letters. Exhibit A is dated February 21, 1919, and is as follows:

"Gerth's Realty Experts, Liverpool, London & Globe Bldg., New Orleans, Louisiana.—Gentlemen: I hereby give you the exclusive agency in my tract of land near Pascagoula, in Mississippi, comprising about 11,000 acres with the sale and exclusive right to sell and resell the same for the period of four months from this date.

"The minimum price which I will accept for the property is $75,000 (seventy-five thousand dollars). Your commission is to be 10% on the actual selling price.

"You are to pay the advertising expense and further incidentals necessary.

"Yours very truly,      Thomas W. Kracke."
Transcript, p. 15.

It will be noted that this letter is signed by Thomas W. Kracke individually, and it constitutes Gerth's Realty Experts his exclusive sales agent for four months from its date.

Exhibit B is dated May 5, 1919, and is as follows:

"Mr. Charles S. Gerth, New Orleans, La.: We hereby authorize you to accept $70,000 for my entire Pascagoula property consisting of 11,000 acres more or less.

"The terms of sale and the manner of releases to be as you outlined orally to me tonight, viz.:

$12,500 cash at time deed is executed.
  5,000 six months after signing deed.
  5,000 twelve months after signing deed.
 11,000 twenty-four months after signing deed.
 16,500 thirty-six months after signing deed.
 16,000 forty-eight months after signing deed.
_____
$66,000
  4,000 fifty-two months after signing deed.
_____
$70,000.00.

"It is distinctly understood that I am not to pay for any abstract or any other fee aside from your commission of 5%. Also that the title to about four or five or six hundred acres which we hold by adverse possession will not be required to be warranted by me or us.
          "Thos. W. Kracke.
          "Gulf Coast Orchard & P. Co.,
              "Thos. W. Kracke, Pres."
Transcript, p. 15

This letter reduces the price of the land, fixes the amounts and terms of payments, reduces the commission to be paid the sales agent to 5 per cent. and is signed by Thos. W. Kracke for himself individually and for the Gulf Coast Orchard & Products Co., in his capacity as the president thereof.

On May 7, 1919, E. L. Martin submitted to Thomas W. Kracke and the Gulf Coast Orchard & Products Company a proposal to purchase the entire property and to pay $68,000 therefor. The proposal provides for the cash and subsequent payments and for certain releases. This proposal was accepted on the same day, the acceptance appearing on the last sheet of the proposal, following the signature of E. L. Martin, in the following words:

          "New Orleans, La., May 7, 1919.
"I hereby declare that I have read the above and foregoing offer, and now accept same, in my capacity as the representative of the Gulf Coast Orchard & Products Co., and individually.
          "Thomas W. Kracke.
          "Gulf Coast Orchard & Products Co.
              "Thos. W. Kracke, Pres."
Transcript, pp. 16, 17, 18, 19, 20.

The testimony of Charles S. Gerth explains the reason for the reduction of the commission from 10 per cent. to 5 per cent. and the reduction of the price of the land to $68,000. Transcript, p. 18.

Defendant's denial that the contracts sued upon were carried out by Charles S. Gerth and that Gerth acted in bad faith are refuted by the record.

"If defendant relies on the nonperformance of the contract by plaintiff, he must allege the fact in his answer. In pleading such nonperformance, the facts which constitute the breach must be alleged. * * *" 13 C. J. Contracts, pp. 738, 739.
"Plaintiff claimed damages from the defendant for an alleged violation of the contract on which it declared on the specific ground set out. The action was not one for an account. Defendant unsuccessfully objected to the introduction of testimony on any other issue than that raised by the petition. The ruling of the court on that point was erroneous, and all evidence outside of that issue is disregarded." Canal Co. v. Milling Co., 119 La. 447, 44 South. 260.

As is well said in brief of counsel for plaintiff:

"Besides the above fatal objection to the first defense made, the defense has not been made out: Plaintiffs, through its manager, Charles S. Gerth, had four months, from February 21, 1919, to sell certain property for a 5 per cent. commission 'on the actual selling price.' Transcript, p. 15. On May 7, 1919, within 2½ months from date of contract, plaintiffs, through their said agent, obtained a party willing, able, and ready to purchase said property on the terms of defendants, and sent the offer to defendants. Transcript, pp. 16–24, 48, 88:
"Although $12,500 was to be deposited only when the offer was accepted (Transcript, p. 15), Mr. Martin, the party whom plaintiffs, through their agent, secured as a purchaser for this property, deposited that amount in the Citizens' Bank & Trust Company of Louisiana, the place designated by him in his offer, on May 29, 1919; that defendants were notified of said deposit (transcript, pp. 72, 76), and that it is there to-day (transcript, pp. 50, 51, 72, 75, 78).
"The agreement of purchase further provided that $13,000 cash was to be paid when title was accepted, deed executed and delivered

to the bank. Transcript, p. 16. It was also agreed that after the delivery of said warranty deed Mr. Martin would, in turn, deliver a deed of trust on said property to secure the balance due on the purchase price. Transcript, p. 18. The notes and trust deed were prepared, but not deposited in the bank, because the original deed was never deposited. Transcript, pp. 62, 63, 74. Mr. Martin's attorneys notified defendants to come to the former's office to pass the sale. Defendant did not come at the appointed time to sign the deed, which had been prepared. Transcript, pp. 61, 62, 66, 67. Mr. Martin is anxious and willing to secure this property, but defendants have refused to transfer it to him. Mr. Martin has even filed suit against defendants in Mississippi for specific performance. Transcript, p. 51.

"Mr. Martin has done everything that he agreed to do. He did not deposit the trust deed, as a trust deed corresponds to a Louisiana mortgage, and it was impossible for him to grant a mortgage until the property has been transferred to him, as it has been stipulated.

" 'The only effect of a deed of trust or common-law mortgage in the countries where they are used, is to establish a lien upon property.' Tillman, Trustee, v. Drake, 4 La. Ann. 16.

"The facts above disclosed show that plaintiffs have sold the property in question to a party able and willing to buy under the terms and conditions fixed, and that they have earned their 5 per cent. on $68,000, the 'actual selling price,' or $3,400. The reason that the sale has not been consummated before suit was filed is due to no fault on the part of plaintiffs or their buyer. The fault is due entirely to defendants not complying with their part of the agreement. Plaintiffs are therefore entitled to their commission.

" 'As a general rule, where a broker finds a customer able and willing to enter into a transaction on the terms proposed by the principal, he cannot, unless there is a special contract to the contrary, be deprived of his right to his commission by reason of the transaction failing on account of some fault of the principal, such as by the principal refusing to complete the transaction, as where he refused to complete the sale. * * *' 9 C. J. Brokers, 623, 624; Land Co. v. Brown, 118 La. 944, 43 South. 628.

"A party having undertaken, on behalf of a foreign corporation, to effect a sale of an ice machine and accompanying paraphernalia to persons domiciled in this state, for a designated and fixed commission on the amount of the sale effected, payable when the plant is turned over to the purchaser and settled for at a given date, is entitled to payment of such commissions at that date, notwithstanding litigation arises between the contracting parties with reference to the vendor's fulfillment of its contract, which operates a delay in the settlement between them." Gravely v. Ice Co., 47 La. Ann. 389, 16 South. 866.

For the reasons assigned the judgment of the lower court is annulled, avoided, and reversed as to the Gulf Coast Orchard & Products Company and the suit is dismissed as to this corporation, and affirmed as to Thomas W. Kracke individually, the costs of appeal to be paid by Thomas W. Kracke.

Rehearing denied by Division B, composed of DAWKINS, LAND, and LECHE, JJ.